IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSCOE BROWN, <br>     Plaintiff <br><br> v. <br><br> C.O. SMITH, et al. <br>     Defendants | ) <br> ) <br> ) Case No. 1:18-cv-00193 (Erie) <br> ) <br> ) THE HON. RICHARD A. LANZILLO <br> ) UNITED STATES MAGISTRATE JUDGE <br> ) <br> ) ECF Nos. 71 & 76 |

**MEMORANDUM OPINION**

I.  Introduction

Two motions for summary judgment pursuant to Fed. R. Civ. P. 56 are pending before the Court at ECF Nos. 71 and 76. The Court will grant both motions and enter judgment in favor of all Defendants because Plaintiff Roscoe Brown failed to exhaust his available administrative remedies before filing this action as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.[1]

II.  Background

  A. Procedural History

Brown, a prisoner in the custody of the Pennsylvania Department of Corrections (DOC), commenced this action against ten employees of the DOC (the Corrections Defendants) and two members of the medical staff at SCI-Albion (the Medical Defendants). His pro se complaint asserted constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims, all arising out of injuries he sustained during an attack upon him by other prison inmates.[2] The Court granted in part

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636. ECF Nos. 13, 14, 93.

[2] The Court granted his motion to proceed in forma pauperis and docketed his complaint. *See* ECF Nos. 1–3.

1

and denied in part the Corrections Defendants' motion to dismiss the claims against them. ECF No. 28. The Court also granted Brown leave to file an amended complaint. *Id.*

Brown filed his first amended complaint. ECF No. 29. The remaining Corrections Defendants answered.[3] ECF No. 30. The Medical Defendants also answered. ECF No. 31.[4] Counsel then entered their appearances on Brown's behalf [ECF Nos. 43-44] and filed his second amended complaint against the same Defendants which alleged violations of his civil rights under 42 U.S.C. § 1983 by failing to protect him from an inmate-on-inmate attack and deliberate indifference to his serious medical needs in the aftermath in violation of the Eighth Amendment to the United States Constitution. ECF No. 46. The Defendants answered. ECF Nos. 48, 51.

After discovery, the Corrections Defendants and the Medical Defendants filed separate motions for summary judgment, each accompanied by a supporting brief, concise statement of material facts, and appendix of exhibits. ECF Nos. 71–78. Brown filed a brief in opposition to each motion along with responsive concise statements of facts. ECF Nos. 80–83. Both sets of Defendants filed reply briefs. ECF Nos. 84-85. The motions for summary judgment are ripe and ready for disposition.

B. The Factual Record

The following facts are drawn from video evidence taken from a stationary security camera, documentary evidence, affidavits, deposition excerpts, and responses to discovery requests.[5] Several inmates in SCI-Albion assaulted Brown and inmate Anthony Wilson on September 1, 2016, at

---

[3] The remaining Corrections Defendants are D'Happart, Fait, Seeinger, Smith, and Wetzel. ECF No. 30, p. 1.

[4] The Medical Defendants are Physician Assistant Daniel Stroup and Doctor Jose Boggio. ECF No. 31.

[5] All affidavits cited in this opinion satisfy the requirements of 28 U.S.C. § 1746 for the use of unsworn declarations in federal court.

2

approximately 3:28 p.m. Wilson ultimately died from his injuries. Video evidence from a security camera in the prison shows that the attack lasted about twenty seconds. ECF Nos. 74-1, p. 21; 75. Moments after the fight began, Officer Smith notified other officials in the "Control" unit that there were several inmates fighting. ECF No. 74-1, pp. 31-32. Within a minute, at least six corrections officers responded to the attack. More followed in the ensuing minutes. According to the "extraordinary incident report," both the fight and the notice from Officer Smith took place at 3:28 p.m. *Id.* Non-defendant Sergeant Keith Conley, only fifteen feet from the housing unit's door when the radio call came in, entered the housing unit where the attack was taking place "seconds" later. ECF No. 74-1, p. 51 (Deposition of Sgt. Conley). Officer Smith was the only SCI-Albion official at the scene when the attack began, according to Sgt. Conley, and video evidence confirms this.[6] ECF No. 74-1, p. 56. As soon as Sgt. Conley arrived at the scene, he gave multiple orders that the fighting stop and that inmates return to their cells. *Id.*, pp. 51–53. The inmates left Brown and Wilson lying on the floor and returned to their cells. Sgt. Conley then called on the radio for the Medical Department. *Id.*, pp. 52-53. He said, "I immediately called for medical...because I didn't know the extent of the injuries at that point. So I felt that to get medical staff there as soon as possible was needed." *Id.*, p. 53. Officers also walked around the housing unit to the cells to double check that the doors were locked closed. ECF No. 74-1, p. 54.

Approximately a minute and a half after the attack began, Lieutenant Jodie Fait also responded to the radio call about inmates fighting. ECF No. 74-1, p. 59. When she arrived, Brown and Wilson were on the floor and multiple inmates were in other areas of the dayroom. *Id.* She had

---

[6] Brown and inmate Eric Fields identify corrections officers Smith, Seeinger, D'Happart, and Lieutenant Fait as officials who watched the attack happen while failing to order backup. ECF Nos. 46-1, ¶ 2; 46-2, ¶ 3. But D'Happart denies even working that day. ECF No. 74-1, pp. 62-63 (D'Happart Answers to Request for Admissions). This disputed fact cannot be resolved on the record as developed. Even so, D'Happart is still entitled to summary judgment because of Brown's failure to properly exhaust his administrative remedies and because the evidence shows that the failure to protect claim fails on the merits.

3

Brown and Wilson handcuffed because she was not present during the incident, did not know the extent of their injuries or who may have been an aggressor. *Id.* Once she determined that the scene was secured, she ordered officers to remove the handcuffs. *Id.*, p. 60.

The video record refutes many of the allegations of Brown's second amended complaint (the "complaint"). The complaint alleged that the DOC Defendants stood by for six minutes during the attack without attempting to intervene. ECF No. 46, ¶¶ 16-17. Then, within minutes, a second attack allegedly occurred. *Id.*, ¶ 24. As noted above, the attack lasted approximately twenty seconds. No evidence supports Brown's allegation that he was attacked a second time. The housing unit's dayroom appears calm at the beginning of the video. After the attack, corrections officers secured the housing unit and took Brown and Wilson to the Medical Department. None of the officers who provided statements mentioned a second attack. ECF No. 74-1, p. 55. And neither Brown's nor Field's affidavits mentions a second attack. Further, while Fields said that he heard Smith say to the other officers at the beginning of the assault, "let em kill each other fuck em," (sic) to which other officers nodded in agreement, [ECF No. 46-1, ¶ 2], the video recording of the incident confirms Sgt. Conley's statement that Smith was the only SCI-Albion official at the scene when the attack began. ECF No. 74-1, p. 56 (Deposition of Sgt. Conley).

The video also shows that within five minutes after the attack began, four Medical Department staff members arrived and began assessing Brown and Wilson. They attended to both men for several minutes. Officers removed Brown's handcuffs during this time. After a few minutes, Brown is assisted to his feet and helped to walk to the Medical Department.

Brown sustained a brief loss of consciousness, contusions and swelling on the left side of his face and right jaw, and a laceration inside his cheek. ECF No. 77-1, p. 127. PA Stroup's assessment was head trauma with loss of consciousness and ordered Brown admitted to the infirmary for

observation. ECF No. 77-1, p. 114. He received regular neurological examinations, aspirin, Tylenol, and other care from PA Stroup and nurses. *Id.*, pp. 115, 125, 126. Brown remained in the infirmary for twelve days beginning on September 1, 2016, until he was discharged by Dr. Jose Boggio. *Id.*, pp. 115, 125. A progress report on September 16, 2016, noted that Brown had no complaints, no signs of distress, and that he was alert and cooperative. *Id.*, p. 124. On September 27, 2016, he was seen by a non-defendant physician assistant and complained of light-headedness and dizziness on and off, and headaches. *Id.*, pp. 113, 125. She ordered blood pressure and pulse checks for three days, twice a day, discontinued some medications, and ordered a follow up. *Id.* Medical records document that, after discharge from the infirmary, Brown was seen at least six times by prison medical staff over the next eight months and that medical staff continued to see him thereafter. *Id.*, pp. 29-30, 111–13, 118-19, 121–25. At many of these visits, Brown raised no neurological issues or ongoing symptoms related to his head injuries.

III.    Standard of Review

Federal Rule of Civil Procedure 56(a) requires the Court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

5

the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations[s] of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

When the events at issue have been captured on video, the court must view the facts on summary judgment "in the light depicted by the video[]." *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). At summary judgment, "where there are video recordings of the incident in question, we need not adopt the non-movant's version of the facts if the recording 'blatantly contradict[s]' the

6

non-movant's version 'so that no reasonable jury could believe it.'" *McDowell v. Sheerer*, 374 Fed. Appx. 288, 291-92 (3d Cir. 2010) (*citing Scott*, 550 U.S. at 380, 127 S. Ct. 1769).

IV. Analysis

   A. The Defendants' Affirmative Defense of Failure to Exhaust Administrative Remedies

   1. PLRA Requirements and the Defendants' Burden of Production on Summary Judgment

The Defendants' motions each assert entitlement to summary judgment because Brown did not properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). ECF No. 34, p. 3. The Court is obliged to address the exhaustion defense as a threshold matter before evaluating the sufficiency of Brown's Eighth Amendment "deliberate indifference" claims. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 304-05 (3d Cir. 2020) (explaining that once a defendant properly raises exhaustion, the district court must consider it as a threshold matter).

The PLRA mandates that prisoners exhaust all available administrative remedies before bringing a lawsuit concerning conditions of their confinement. 42 U.S.C. § 1997e(a). This requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002). The plaintiff's failure to exhaust available administrative remedies is an affirmative defense that the defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford*, 548 U.S. at 88, 126 S. Ct. 2378). These

procedural rules are supplied by the individual prisons. *Jones*, 549 U.S. at 218, 127 S. Ct. 910; *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim...is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"). Thus, whether a plaintiff has properly exhausted administrative remedies is determined according to the procedures and rules adopted by the plaintiff's correctional institution. *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). As the Supreme Court has explained:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 107 U.S. at 217, 127 S. Ct. 910.

The Inmate Grievance Policy, DC-ADM 804, governs here.[7] The DC-ADM 804 grievance system consists of three separate stages.[8] First, within fifteen days of the incident, the prisoner is required to submit a written grievance for review by the facility manager or the regional grievance coordinator, who, in turn, must respond in writing within ten business days. Second, if the grievance is denied, the inmate must submit a written appeal to intermediate review within ten working days, and again the inmate is to receive a written response within ten working days. Finally,

---

[7] Three administrative remedy processes provide inmates in the custody of the Pennsylvania DOC with an avenue to challenge aspects of their confinement. *See McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted). Those policies are: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Administrative Custody policy, DC-ADM 802; and (3) the Inmate Grievance Policy, DC-ADM 804. *Id.* Which of these policies applies in a given instance depends on the subject matter of the inmate's grievance and his or her custody classification. DC-ADM 801 deals with inmate misconducts. DC-ADM 802 is similar but applies only to inmates who are in administrative custody. Finally, DC-ADM 804 provides the relevant grievance procedures for all inmate grievances not connected with a misconduct citation. *Id.* DC-ADM 804 is relevant here.

[8] The DC-ADM 804 is available on the DOC's website, here: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. The current version was issued April 27, 2015 and became effective May 1, 2015 (preceding and thus governing the events here).

8

if the inmate remains dissatisfied following this second level outcome, he must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within fifteen working days, and then the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 1997), *aff'd*, 532 U.S. 731, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001).

To establish the plaintiff's failure to exhaust administrative remedies at the summary judgment stage, the moving party must produce a record demonstrating his entitlement to judgment on the defense as a matter of law. Fed. R. Civ. P. 56(c)(1)(A). Typically, the most efficacious means to do so is for the defendant to produce the plaintiff's entire grievance record. *See, e.g., Green v. Maxa*, 2019 WL 1207535, at *6 (W.D. Pa. Mar. 14, 2019); *Jackson v. Superintendent Greene SCI*, 671 Fed. Appx. 23, 24 (3d Cir. 2016). Where the plaintiff misses a step in the grievance process, however, the defendant should provide an affidavit from a person with knowledge or a properly authenticated business record affirming factually that the plaintiff failed to properly exhaust. *See* Fed. R. Civ. P. 56(c)(4). This is often an affidavit from a records custodian. *See Wiggins v. Correct Care Solutions, LLC*, 2017 WL 11550519, at *5, *7-8 (E.D. Pa. May 9, 2017); *Muhammad v. Sec'y Pa. Dep't of Corrs.*, 621 Fed. Appx. 725, 727 (3d Cir. 2015) (affidavit attesting plaintiff failed to appeal to SOIGA); *accord Martin v. Pa. Dep't of Corrs.*, 395 Fed. Appx. 885, 886 (3d Cir. 2010) (affidavit stating plaintiff "never sought final review").

2. Brown's Grievance Record

In support of their exhaustion defense, the Defendants have produced the administrative record concerning Brown's three grievances that relate to the matters raised in this action: Grievance # 644787, Grievance # 650473, and Grievance # 645260.[9] The Defendants also

---

[9] Although the Court specifically cites only to documents from the grievance record that bear directly upon the outcome of the pending motions, the Court has reviewed all submissions regarding Defendants' exhaustion defense. *See* ECF Nos. 74-1, pp. 1–20, 45–48; 77-3, pp. 1–23; 77-4, pp. 1–19.

9

produced an undated grievance tracking chart concerning Brown's grievances and an affidavit from Keri Moore, SOIGA's Assistant Chief Grievance Officer, verifying the accuracy of the administrative record. ECF No. 74, pp. 45–48.

The record reflects that Brown filed two grievances on September 25, 2016:[10] Grievance # 644787 and Grievance # 645260. Grievance # 644787 complained about how staff handled the September 1 attack and Brown's subsequent medical care. He requested monetary relief in this grievance. The next day, Michelle Tharp—Facility Grievance Coordinator—rejected this grievance on the grounds that it violated grievance requirement number 8 listed on the appeal form: "Grievance based upon different events must be presented separately." ECF No. 77-3, p. 5. Brown resubmitted this grievance on October 27, 2016, writing, "I'm refiling rejected grievance # 644787 …The rejection was accompanied with [initial review response to Grievance] # 645260." Brown again discussed the September 1 attack and his subsequent medical care. He again sought monetary relief. On November 3, 2016, Tharp also rejected this grievance, again citing grievance requirement number 8, as well as requirement number 9.[11] Number 9 states, "The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed. Prior grievance # 645260." ECF No. 77-3, p. 22.

Grievance # 645260 similarly discussed Brown's complaints about staff's handling of the attack and his medical care. However, this grievance did not include a request for monetary relief. On October 18, 2016, Mike Edwards issued an initial review response denying this grievance on the

---

[10] DC-ADM 804 § 1.A.8 requires an inmate to file a grievance within 15 working days of an incident. Defendants have not raised timeliness as a basis for summary judgment. Accordingly, the Court will not address the issue.

[11] DC-ADM 804 § 1.A.20 states that, "If a grievance is rejected, the grievance may be re-submitted, using the same grievance number, within five working days of the rejection notice date." Although this was a "resubmitted grievance," staff assigned it a new number: "Grievance # 650473." Defendants have not challenged the timeliness of this resubmitted grievance. Accordingly, the Court will not address the issue.

10

merits, writing that "[t]he security and medical staff did a fine job that day." ECF No. 77-3, p. 18. Brown appealed this denial to Superintendent Michael Clark on October 27, 2016. In his appeal from the denial of # 645260, Brown added a request for monetary relief.[12] This appeal was not processed because, on November 21, 2016, Facility Grievance Coordinator Michelle Tharp remanded Grievance # 645260 for further consideration of Brown's claims. On remand, Edwards again denied the grievance on December 12, 2016, essentially repeating the same grounds as his original denial.

Brown appealed the denial of Grievance # 645260 to the Facility Manager on December 18, 2016. The Facility Manager dismissed the appeal on January 12, 2017, writing, "This grievance has been looked into at length. At this point I am dismissing your grievance as you have not followed the DC-ADM 804 in regard to your appeal. The DC-ADM 804 is clear, that you are not to exceed two (2) pages (2 one-sided or 1 double-sided 8 ½ X 11 page, sheets of paper). Your appeal is almost (3) full pages in length. I am dismissing your appeal as it violates the DC-ADM 804 in this regard." ECF No. 77-3, p. 10.

Brown appealed this dismissal to final review with SOIGA.[13] SOIGA sent him an "Action Required" notice on January 26, 2017, explaining that his appeal was incomplete according to the DC-ADM 804 because he had not attached the following documentation: "Legible copy of your initial grievance, signed & dated"; "Initial review response/rejection by Grievance Officer"; "Legible

---

[12] Brown did not request financial compensation in Grievance #645260, but he did so in his appeal. Grievance #644787 included a request for monetary relief. Tharp rejected Grievance #644787 because the matters raised therein were already under consideration in connection with Grievance #645260. The Court is inclined to find that, in doing so, Tharp essentially consolidated Grievance #644787 with Grievance #645260 and thereby incorporated Grievance #644787's request for monetary relief into Grievance #645260. Given the ultimate disposition of Defendants' motions, however, the Court need not reach the issue.

[13] Brown submitted a separate appeal of Grievance # 645260 to the Facility Manager without using the official DOC form, contesting dismissal of his appeal based on its length. Any defect in this appeal is irrelevant, however, because he also submitted an appeal to SOIGA using the required DC-ADM 804 form and procedure.

11

copy of appeal to Facility Manager, signed & dated"; and "Facility Manager's decision/response." ECF No. 77-4, p. 16. After Brown resubmitted his appeal with the requested documents, Keri Moore of SOIGA dismissed his appeal on February 28, 2017, based on her assessment that it did not comply with requirement number 13 listed on the appeal form: "You have not provided this Office with required and/or legible documentation for proper review." ECF No. 77-3, p. 8. Moore elaborated that "the copy of the initial grievance that you provided is not legible. Therefore, your grievance appeal to this office is dismissed." Moore did not rely on the reason the Facility Manager cited to dismiss the grievance, declining to check requirement number 6: "The grievance or appeal exceeded the two-page limit. Description needs to be brief." Moore did not direct Brown to resubmit his appeal with a legible copy of the initial grievance. Brown filed this lawsuit on July 5, 2018. ECF No. 1.

In her affidavit Moore attested that she had reviewed Brown's grievance appeal record and that Brown did not appeal grievance # 644787 to final review. ECF No. 74-1, pp. 45–48. She also stated that Grievance # 645260 was dismissed at the Facility Manager review because Brown submitted an appeal that was "three (3) pages in length, one page longer than required by DC-ADM 804 guidelines." *Id.*, p. 47. Moore explained that she dismissed Brown's appeal to SOIGA of the denial of grievance # 645260 because "he did not provide a legible copy of his initial grievance" with his appeal. *Id.*

### 3. The Defendants' Exhaustion Arguments

The Defendants raise four arguments in support of their exhaustion defense. First, they argue that Brown did not exhaust any claims raised in Grievance # 644787 and Grievance # 650473 because he did not appeal the denial of either grievance to final review by SOIGA. ECF No. 78, p. 18. Second, as to the one grievance that Brown did appeal to final review—Grievance # 645260—

the Defendants argue that his appeal violated DC-ADM 804 § 2.A.1.d.4, which limits an appeal to "two pages (two one-sided or one double sided 8 ½" x 11" page)," because it was "almost" three pages in length, and that this violation constitutes a procedural default and resulting failure to exhaust his administrative remedies. Third, Defendants argue that Brown attached an illegible copy of Grievance # 645260 to his appeal in violation of DC-ADM 804 § 2.B.j.1, which requires that a "proper appeal to final review must include:...a legible copy of the Initial Grievance," thereby committing another procedural default. ECF No. 78, p. 22-23. Finally, the Medical Defendants[14] argue that Brown's claims for money damages are barred because he did not request monetary relief in his initial Grievance # 645260 (the only one appealed to final review) despite the requirement of DC-ADM 804 § 1.A.11.d that the inmate state specifically all forms of requested relief.[15] ECF No. 78, p. 23.

    4. Exhaustion Analysis

        a. Brown did not exhaust Grievance # 644787 or Grievance # 650473 because he did not appeal the denial of either grievance to final review.

Keri Moore of SOIGA affirmed that Brown never appealed Grievance # 644787 and Grievance # 650473 to final review by SOIGA as required by DC-ADM 804. ECF No. 74-1, pp. 45–48. *See Muhammad v. Sec'y Pa. Dep't of Corrs.*, 621 Fed. Appx. 725, 727 (3d Cir. 2015) (affidavit attesting plaintiff failed to appeal to SOIGA); *accord Martin v. Pa. Dep't of Corr.*, 395 Fed. Appx. 885, 886-87 (3d Cir. 2010) (affidavit stating plaintiff "never sought final review"). Brown's failure to do so means that Grievance # 644787 and Grievance # 650473 did not exhaust Brown's administrative

---

[14] The Corrections Defendants also raise these three arguments that Brown procedurally defaulted his claims, but do not raise the failure to request monetary damages argument. ECF No. 72, pp. 7-8.

[15] This argument would not defeat Brown's claim for declaratory relief. His Amended Complaint sought, "a declaration that the acts and commissions described herein violated his United States Constitutional Rights." ECF No. 46, p. 17.

remedies as to the conduct alleged therein. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules.") (citing *Woodford*, 548 U.S. at 88). Therefore, unless Brown properly raised his claims and exhausted his administrative remedies through Grievance # 645260, the PLRA will bar him from pursing his claims in federal court.

> b. SOIGA waived Brown's failure to comply with DC-ADM 804 § 2.A.1.d.4 as a ground for dismissal of his appeal of Grievance # 645260.

Brown's appeal from the denial of Grievance # 645260 to the Facility Manager was "almost" three pages long and therefore violated the two-page limit imposed by DC-ADM 804 § 2.A.1.d.4. The Facility Manager dismissed the appeal on this basis. On Brown's appeal to SOIGA for its final review of the dismissal, Keri Moore did not affirm the dismissal for this reason. Instead, she issued an "Action Required" notice informing Brown that the DOC's rules required him to submit various documents with his appeal. After Brown submitted all specified documents, Moore dismissed his appeal using a SOIGA form that lists several standard reasons SOIGA may dismissal an appeal, checking reason number 13: "You have not provided this Office with required and/or legible documentation for proper review." The explanation provided on the form advised Brown that while he had "provided a copy of all requested documents," his "copy of the initial grievance...[was] not legible."

Moore did not check reason number 6 on the form, which states: "The grievance or appeal exceeded the two-page limit. Description needs to be brief." The Third Circuit has held that when an inmate's grievance is dismissed for failure to comply with a procedural rule but is considered on the merits during a grievance appeal, this excuses a procedural default. *Rinaldi v. United States*, 904 F.3d 257, 271 (3d Cir. 2018) ("where a prison disregards its own procedures and rejects an inmate's

otherwise procedurally defaulted complaint on the merits, the claim is 'properly exhausted' under the PLRA."). The rationale underlying this holding leads the Court to conclude that when a first grievance appeal is dismissed for a procedural reason but SOIGA subsequently declines to adopt that reason on final review, that procedural error is waived. The Court also concludes that such a waiver arises even where SOIGA does not reach the merits of the appeal but instead dismisses the grievance appeal for a different and distinct procedural reason. *See Rinaldi*, 904 F.3d at 272 ("control over the grievance process is appropriately vested in prison administrators"). *See also Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (holding that there is no PLRA violation for a court, "[d]eclining to enforce procedural rules when prison officials fail to do so [because it] serves the state's interests in 'deciding when to waive or enforce its own rules.'") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010)).

A finding of waiver in this case is further reinforced by the language of DC-ADM 804 § 2.A.1.d.4. Although the rule states that "[e]ach appeal *must*...not exceed two pages," this clause is immediately followed by DC-ADM 804 § 2.A.1.e, which qualifies, "Failure to comply *may* result in the appeal being dismissed." Thus, DC-ADM 804 § 2.A.1.e provides explicit discretion for officials charged with enforcement to waive an inmate's procedural error. The form utilized by SOIGA included a specific reference to the two-page limit on appeals that Moore could have checked if she agreed with the Facility Manager that dismissal on this basis was appropriate. Moore chose not to include this requirement as a ground for dismissal. The Court is therefore compelled to conclude that SOIGA waived the error on appeal.

> c. Nevertheless, Brown violated DC-ADM 804 § 2.B.1.j.1 when he included an illegible copy of his initial grievance with his appeal of Grievance # 645260 to final review by SOIGA.

The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Courts in the Third Circuit

15

have held that the DC-ADM 804 creates a mandatory rule that inmates include specified documents with their appeals to final review and failure to comply constitutes a procedural default. *See, e.g., Mack v. Klopotoski*, 540 Fed. Appx. 108, 113 (3d Cir. 2013) (affirming dismissal for failure to properly exhaust because inmate failed to include photocopies of his appeals to the Facility Manager and rejecting substantial compliance argument that inmate filed handwritten copies instead because policy specifically required photocopies). DC-ADM 804 § 2.B.1.j.1 requires that an appeal to SOIGA include a "legible copy of the Initial Grievance," and courts have held that including illegible documents violates the rule and constitutes a procedural default. *See Quinn v. Tritt*, 2019 WL 4793038, at *8 (M.D. Pa. June 21, 2019), *report and recommendation adopted in relevant part*, 2019 WL 4750312 (M.D. Pa. Sept. 30, 2019) (initial grievance illegible); *Holmes v. Pa. Dep't of Corr.*, 2020 WL 4041054, at *3 (M.D. Pa. July 17, 2020) (same). In *Holmes*, in response to the inmate's argument, the court wrote, "While it stands to reason that SOIGA could obtain a copy of every inmate's grievance that is appealed to final review, that is not the procedure established by the DOC." *Id.*, at *5. When Brown first appealed Grievance # 645260 to final review, SOIGA sent him an "Action Required" notice which explained that his appeal was incomplete without including the following documentation: "Legible copy of your initial grievance, signed & date"; "Initial review response/rejection by Grievance Officer"; "Legible copy of appeal to Facility Manager, signed & dated"; and "Facility Manager's decision/response." ECF No. 77-4, p. 16. After Brown resubmitted his appeal with the requested documents, Moore dismissed it because he included an illegible copy of his initial grievance. ECF No. 77-3, p. 8. *See also Sanders v. Beard*, 2013 WL 1703582, at *5 (M.D. Pa. Apr. 19, 2013) (granting summary judgment when plaintiffs failed in their appeal to SOIGA to "include all necessary documentation and failed to remedy the deficiency after being informed of it").

16

While Brown's loss of his ability to pursue his claim based on an arguably technical violation of the DOC's procedural rules may appear harsh, this outcome is compelled by precedent. *See Mack*, 540 Fed. Appx. at 113; *Quinn*, 2019 WL 473038, at *8; *Holmes*, 2020 WL 4041054, at *3. "[I]t is beyond the power of the court to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73-74 (3d Cir. 2000). The Court is bound by the PLRA to apply the prison's available administrative exhaustion rules, however stringent.[16] *See* 42 U.S.C. 1997e(a); *Jones*, 549 U.S. at 218.

B. Brown's Claims Also Fail on the Merits.

The record also compels the Court to conclude, on the merits, that no reasonable jury could find that any prison officials failed to "take reasonable measures to guarantee the safety of inmates" in violation of the Eighth Amendment to the United States Constitution. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes the general duty to "protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). There is no evidence that

---

[16] Because the Court has concluded that Brown failed to exhaust his administrative remedies, the Court need not address the Medical Defendants' argument that Brown procedurally defaulted any claim for money damages by violating the DC-ADM 804's requirement that an inmate seeking financial compensation make that request on the initial grievance. *See* ECF No. 78, p. 23.

17

any officer had notice or even a reason to suspect that inmates would attack Brown and Wilson. Without evidence like this, the Defendants are entitled to summary judgment. Once an attack starts, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). But here, the record shows that no officers had "a realistic and reasonable opportunity to intervene" any sooner than they did. *Id.* at 651. The record shows that Officer Smith immediately radioed for assistance, that Sgt. Conley rushed in and ordered the attacking inmates to disperse (ending the attack in twenty seconds), and that at least six corrections officers responded within approximately one minute. No genuine dispute of material fact exists to support that any Defendant acted with deliberate indifference.

Brown has also failed to present facts that would allow a reasonable jury to find that any Defendant acted with deliberate indifference to his medical needs. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). There is no evidence that Brown was adversely affected by his being temporarily handcuffed immediately after the attack or that this was done for a reason other than to secure the scene following the brawl. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) (deliberate indifference may be manifested by an intentional refusal to provide care). PA Stroup assessed and treated Brown that day, and he, Dr. Boggio, and other medical staff provided medical care in the succeeding days, maintaining him in the infirmary for observation and treatment for twelve days, conducting regular neurological exams, providing aspirin, Tylenol, and other care for his contusions and swelling on the left side of his face and right jaw and cheek laceration. ECF No. 77-1. The results of his neurological examinations were normal. Although Brown wanted more and different treatment, a "mere disagreement as to the proper medical treatment" cannot establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

18

V.      Conclusion

For the foregoing reasons, the Defendants' Motions for Summary Judgment at ECF No. 71 and ECF No. 76 will be GRANTED. A separate judgment order will follow.

                                                          _____
                                                          THE HON. RICHARD A. LANZILLO
                                                          UNITED STATES MAGISTRATE JUDGE

Entered this 27th day of September 2021.